# EXHIBIT A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

WELLS FARGO BANK, N.A., a National Association;"Additional
Parties Attachment form is Attached."

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CARLOS VALDES, an Individual; and MINVERA VALDES, an
Individual.

| |
|---|
| *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Orange<br><br>**06/19/2018** at 12:50:53 PM<br>Clerk of the Superior Court<br>By Tamarah Rabb,Deputy Clerk |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of California - CJC<br><br>Central Justice Center<br>700 Civic Center Drive West, Santa Ana, California 92701 | CASE NUMBER:<br>*(Número del Caso):* 30-2018-01000230-CU-OR-CJC<br><br>Judge Derek W. Hunt |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Jarrod Y. Nakano, McFarlin LLP, 4 Park Plaza, Suite 1025, Irvine, California 92614. 949-544-2640

| DATE:   06/19/2018   DAVID H. YAMASAKI, Clerk of the Court | Clerk, by | *Tamarah Rabb* | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

Tamarah Rabb

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]
**SUMMONS**
Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Wells Fargo Bank, N.A., et al., v. Valdes, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[ ] Plaintiff   [✓] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

QUALITY LOAN SERVICE CORPORATION, a California Corporation; and DOES 1 through 100; Inclusive.

Page _____ of _____

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

1  **MCFARLIN LLP**
   Timothy G. McFarlin (State Bar No. 223378)

2  Email: tim@mcfarlinlaw.com
   Jarrod Y. Nakano (State Bar No. 235548)

3  Email: jarrod@mcfarlinlaw.com
   4 Park Plaza, Suite 1025

4  Irvine, California 92614
   Telephone: (949) 544-2640

5  Fax: (949) 336-7612

6  Attorneys for Plaintiffs

7  CARLOS VALDES and MINVERA VALDES

   ELECTRONICALLY FILED
   Superior Court of California,
   County of Orange
   06/19/2018 at 12:50:53 PM
   Clerk of the Superior Court
   By Tamarah Rabb, Deputy Clerk

8  SUPERIOR COURT OF THE STATE OF CALIFORNIA

9  FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

10                                          Judge Derek W. Hunt

11 CARLOS VALDES, an Individual; and      Case No.   30-2018-01000239-CU-OR-CJC
   MINVERA VALDES, an Individual,

12
                Plaintiffs,

13
                      v.

14
   WELLS FARGO BANK, N.A., a National     **COMPLAINT FOR:**

15 Association; QUALITY LOAN SERVICE
   CORPORATION, a California              (1)  VIOLATION OF THE HOMEOWNER

16 Corporation; and DOES 1 through 100;        BILL OF RIGHTS; AND
   Inclusive,

17                                         (2)  UNFAIR BUSINESS PRACTICES – CAL.
                Defendants.                     PROF. & BUS. CODE § 17200.

18

19

20

21

22

23

24

25

26

27

28

                                    -1-
                                 COMPLAINT

1    Comes now Plaintiffs CARLOS VALDES and MINVERA VALDES, who complains and

2    alleges as follows:

3    **PARTIES**

4    1.    Plaintiffs CARLOS VALDES and MINVERA VALDES (collectively, "Plaintiffs") are,

5    and at all times relevant hereto were, individuals whose principal place of residence is located at

6    1975 N. Lassen Blvd., Orange, CA 92867 (the "Property").

7    2.    Plaintiffs are informed and believe and thereupon allege that Defendant WELLS FARGO

8    BANK, N.A. ("Wells Fargo") is a National Association conducting business within this judicial

9    district, and claiming an interest in the Property.

10   3.    Plaintiffs are informed and believe and thereupon allege that Defendant QUALITY

11   LOAN SERVICE CORPORATION ("Quality Loan") is, and at all relevant times was, a

12   California corporation, conducting business within this judicial district, and claiming an interest

13   in the Property

14   4.    The true names and capacities of defendants named herein as DOES 1 through 100 are

15   unknown to Plaintiffs at this time, who therefore sue said defendants by such fictitious names.

16   Plaintiffs will seek leave of Court to amend this Complaint to insert the true names and capacities

17   of such fictitiously-named defendants when they have been ascertained.  Plaintiffs are informed,

18   believe, and on that basis allege that such defendants are liable for the injuries to Plaintiffs

19   hereinafter alleged.

20   5.    Plaintiffs are informed, believe, and upon that basis allege that the defendants named as

21   DOES 1 through 100 are individuals and/or unknown entities that reside and/or conduct business

22   within this judicial district, and claim an interest in the Property.

23   6.    Plaintiffs are informed, believe, and upon that basis allege that the defendants named as

24   DOES 1 through 100 are responsible in some manner for the occurrences hereinafter alleged, and

25   that Plaintiffs' damages were proximately caused by these defendants.

26   7.    At all relevant times to this action, the defendants, and each of them, acted in concert

27   with, and/or was the agent, partner, affiliate, joint venturer, co-conspirator, aider and abettor,

28   servant, associate, representative, predecessor-in-interest and/or successor-in-interest of the other,

- 2 -

COMPLAINT

1  and engaged in the acts, omissions and occurrences hereinafter alleged, the defendants, and each

2  of them, acted in concert with and within the course and scope of their authority as agent, partner,

3  affiliate, joint venturer, co-conspirator, aider and abettor, servant, associate, representative,

4  predecessor-in-interest and/or successor-in-interest of the other.

5                                    **JURISDICTION AND VENUE**

6  8.      This is an action for injunctive and declaratory relief, and damages against Wells Fargo

7  and Quality Loan for Violation of the Homeowners Bill of Rights and Unfair Business Practices

8  under California *Business & Professions Code* Section 17200.

9  9.      This Court has subject-matter jurisdiction over the causes of action alleged in Plaintiffs'

10  Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise

11  excluded from exercising subject-matter jurisdiction over said causes of action.

12  10.     This Court has personal jurisdiction over Defendants because each Defendant resides in, is

13  incorporated in, has its main place of business in, and/or conducts business in the State of

14  California, and a substantial portion of the acts, omissions, events, and transactions constituting

15  the causes of action alleged herein occurred within the State of California. CAL. CODE CIV. PROC.

16  § 410.10.

17  11.     This Court is the appropriate venue for this action under California *Code of Civil*

18  *Procedure* Sections 395 and 395.5, because the acts that give rise to the causes of action alleged

19  herein occurred in the County of Orange, State of California. Plaintiffs hereby designate the

20  County of Orange, State of California, as the place of proper venue.

21                                    **GENERAL ALLEGATIONS**

22  12.     On or around September 23, 2011, Plaintiffs entered into a written loan agreement with

23  Quicken Loans Inc. ("Quicken Loans") (the "Loan"). Therein, Quicken Loans agreed to loan

24  Plaintiffs a sum of $585,000.00 secured by the Property through a Deed of Trust. Mortgage

25  Electronic Registration Systems, Inc. ("MERS") was the named beneficiary under the Deed of

26  Trust. Hallmark Escrow ("Hallmark") was the named trustee under the Deed of Trust. A true

27  and correct copy of the Deed of Trust is attached and incorporated hereto as Exhibit A.

28  13.     After a series of assignments, the Loan was assigned to Wells Fargo in or around 2014,

                                            - 3 -

1   and Wells Fargo began to service the Loan.

2       14.    In or around the beginning of 2017, due to the downturn in the economy, Plaintiffs had

3   difficulty making their mortgage payments. As such, Plaintiffs contacted Wells Fargo for

4   assistance. Wells Fargo advised Plaintiffs to submit a loan modification application. Shortly

5   thereafter, Plaintiffs submitted their complete loan modification to Wells Fargo.

6       15.    On several occasions, Plaintiffs received a letter from Wells Fargo requesting Plaintiffs to

7   resend the documents. On every occasion, Plaintiffs immediately submitted the requested

8   documents.

9       16.    Thereafter, Plaintiffs continued to contact Wells Fargo to follow up on their loan

10   modification review. However, Plaintiffs' loan modification application was denied due to

11   insufficient documentation, despite Plaintiffs consistently providing Wells Fargo with requested

12   documents.

13       17.    On or around June 20, 2017, Quality Loan, on behalf of Wells Fargo, recorded a Notice of

14   Default and Election to Sell Under Deed of Trust ("Notice of Default") on the property. At no

15   point was Plaintiffs provided with any notice that Hallmark Escrow transferred its interest as the

16   trustee to Quality Loan. Plaintiffs were never notified, nor were any document recorded notifying

17   Plaintiffs of an assignment of interest from Hallmark Escrow to Quality Loan. As such, the NOD

18   is void. A true and correct copy of the Notice of Default is attached and incorporated hereto as

19   Exhibit B.

20       18.    At no time prior to recording of the Notice of Default did Wells Fargo, Quality Loan, the

21   beneficiary, or their agents contact Plaintiffs, in person or by telephone, to notify him, follow up

22   telephonically, or advise Plaintiffs of their right to a meeting.

23       19.    Further, pursuant to California *Civil Code* section 2923.5, a trustee may not file a Notice

24   of Default pursuant to California *Civil Code* section 2924, *et seq.*, until thirty (30) days after

25   satisfying the due diligence requirements outlined above. As Plaintiffs was never contacted by

26   Wells Fargo, Quality Loan, the beneficiary, or their agents, they failed to comply with California

27   *Civil Code* sections 2923.5 and 2924 et seq., and the recorded Notice of Default on Plaintiffs'

28   Property is void.

- 4 -

COMPLAINT

20.     Wells Fargo, Quality Loan, the beneficiary, or their agents never sent Plaintiffs a first class letter that included a toll free number for HUD to find a HUD-certified housing counseling agency.  Moreover, after the letter has been sent, efforts must be made to contact the borrower by telephone at least three times, at three hours and in different ways; Defendants did not attempt to contact the borrower with an automated system that connects the borrower to a live representative; and no certified letter was sent to the borrower.  If the borrower did not respond within two weeks; the borrower must be provided a means for the borrower to contact the lender in a timely manner; and there must be a posted prominent link to the lender or servicer's homepage of its internet website.

21.     On or around September 25, 2017, MTC Financial, on behalf of Wells Fargo, recorded a Notice of Trustee's Sale on the property.  The notice indicated that the trustee's sale would take place on June 13, 2018.  A true and correct copy of the Notice of Trustee's Sale is attached and incorporated hereto as Exhibit C.

22.     After Plaintiffs received the Notice of Trustee's Sale, Plaintiffs contacted Wells Fargo in regard to the Notice of Trustee's Sale and were told in order to stop the foreclosure sale they would need to submit a loan modification packet.

23.     In reliance upon Wells Fargo's statements, Plaintiffs resubmitted a complete loan modification application to Wells Fargo in or around 2018.  Mrs. Valdes had returned to work and Plaintiffs' income had increased.  However, despite Plaintiffs' monthly income being able to support a loan modification based on net present value, Wells Fargo denied Plaintiffs' application based on insufficient income.  However, the basis for the denial was inconsistent with the documents and financials that were provided by Plaintiffs.  Plaintiffs had submitted monthly income in excess of $16,000.00 for a monthly mortgage payment of $3,319.51.  Plaintiffs were advised to apply for a loan modification with Keep Your Home California.  As such, Plaintiffs applied for a loan modification with Keep Your Home California, however Plaintiffs did not qualify due to their amount of arrearages.

24.     At all relevant times, Wells Fargo has inaccurately updated Plaintiffs about their loan modification review, sending denials and pending review letters out of order, and verbally giving

- 5 -

1    Plaintiffs updates that conflict with its online system.  At this time, Wells Fargo has been unable

2    to confirm that the non-judicial foreclosure will be postponed.  As such, Plaintiffs bring suit to

3    enforce their notice and disclosure rights under the Homeowner Bill of Rights.  In particular,

4    Defendants can no longer dual track the loan modification review and non-judicial foreclosure

5    process.

6    25.    A controversy has arisen between Plaintiffs and Defendants because of Defendants'

7    failure to provide accurate material disclosures and notices such that Plaintiffs can cure any

8    alleged default and extinguish the transaction by operation of law.

9    26.    The foregoing acts and material omissions of the Defendants were undertaken willfully,

10    persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiffs' notice

11    and disclosure rights.

12    27.    Defendants are acting in concert to deprive Plaintiffs of their civil rights by attempting to

13    take their Property without due process of law.

14    28.    Plaintiffs stand ready, willing, and able to tender and pay the amounts due under the Loan

15    and Deed of Trust, and Plaintiffs are ready, willing, and able to make such payment at the times

16    required of them by law.

17    <u>**FIRST CAUSE OF ACTION**</u>

18    **(Violation of Homeowner Bill of Rights Against All Defendants)**

19    29.    Plaintiffs incorporate by reference, as though fully set forth, paragraphs 1 through 28 of

20    this Complaint.

21    30.    Beginning January 1, 2013, the Homeowner Bill of Rights made numerous amendments

22    and additions to the pre-foreclosure process applicable to owner occupied first lien mortgage

23    loans.  The Homeowner Bill of Rights was designed to protect homeowners from unfair practices

24    by banks and mortgage companies and to help consumers and communities cope with the state's

25    urgent mortgage and foreclosure process.

26    31.    The Homeowner Bill of Rights requires a thirty (30) day pre-foreclosure notification and

27    consultation process prior to the initiation of the non-judicial foreclosure process.  CAL. CIV.

28    CODE §§ 2923.5, 2924.17, and 2923.55.  Lenders are now required to provide an actual proposal

- 6 -

1 | for a loan modification if the borrower submits a completed application for a modification during

2 | the specified notification and due diligence periods. CAL. CIV. CODE §§ 2923.5, 2923.6, and

3 | 2924.18. Lenders are required to provide a single point of contact for all communications about

4 | foreclosure and modification. CAL. CIV. CODE § 2923.7. There is a prohibition on dual tracking

5 | by lenders, which prevents the lender from initiating or proceeding with the non-judicial

6 | foreclosure while the application for a modification is being processed. CAL. CIV. CODE §

7 | 2923.6.

8 | 32. The Homeowner Bill of Right requires that a borrower who has not exhausted its first lien

9 | loan modification alternatives, must also be given written notice within five business days after a

10 | notice of default is recorded, detailing the borrower's foreclosure avoidance alternatives and

11 | setting forth additional information about the process for obtaining consideration of a loan

12 | modification or other foreclosure avoidance process. CAL. CIV. CODE §§ 2923.9 and 2923.10.

13 | 33. Once a loan modification, forbearance or other foreclosure alternative proposal is

14 | approved, the lender is prohibited from recording a notice of default so long as the borrower is in

15 | compliance with any trial period or permanent loan modification, forbearance or repayment plan.

16 | Further, if a notice of default was recorded before the modification was applied for or approved,

17 | the lender is prohibited from filing a notice of sale or proceeding to a trustee's sale, and upon

18 | executing the loan modification, forbearance or other agreement evidencing a foreclosure

19 | alternative, the lender must rescind and cancel any pending notice of default or sale, and

20 | effectively must start the process over if the borrower fails to comply with the approved plan.

21 | CAL. CIV. CODE §§ 2923.10, 2923.11, and 2923.18.

22 | 34. Following the denial of a first lien loan modification application, the mortgage servicer

23 | shall send a written notice to the borrower identifying the reasons for denial, including (1) the

24 | amount of time from the date of letter to in which the borrower may request an appeal of the

25 | denial; (2) if the denial was based on investor disallowance, the specific reasons for the investor

26 | disallowance; (3) if the denial is the result of net present value calculation, the monthly gross

27 | income and property value used to calculate the net present value; (4) if applicable, a finding that

28 | the borrower was previously offered a first lien loan modification and failed to successfully make

- 7 -

1   payments under the terms of the modified loan; and (5) if applicable, a description of the other

2   foreclosure prevention alternatives for which the borrower may be eligible, and a list of steps

3   borrower must take in order to be considered for those options.  CAL. CIV. CODE § 2923.6(f).

4   35.    In this case, Defendants' initiation of the non-judicial foreclosure process has been rife

5   with material violations of the Homeowner Bill of Rights.  Defendants cannot prove that the non-

6   judicial foreclosure proceedings have complied with the statutory requirements of the

7   Homeowner Bill of Rights.  As set forth above, Defendants have failed to comply with the

8   requirements of California *Civil Code* sections 2923.5, 2923.55, and 2932.5, *et seq.*

9   36.    In addition, Wells Fargo has refused to review Plaintiffs for potential loan modifications

10  and work out programs.  As such, Defendants causing the recording of the Notice of Default and

11  Notice of Trustee's Sale, were in violation of Plaintiffs' rights to be reviewed for a loan

12  modification or work out program, and Defendants' initiation of the non-judicial foreclosure is in

13  a clear violation of the dual tracking prohibition under HBOR.

14  37.    Pursuant to California *Civil Code* Sections 2924.12(a) and 2924.18, Plaintiffs seeks an

15  order enjoining Defendants from engaging in the acts and practices as hereinabove alleged, and

16  an order that Defendants provide appropriate restitution to Plaintiffs.

17  38.    Pursuant to California *Civil Code* Section 2924.12, Plaintiffs seeks an award of attorney's

18  fees and costs.

19  39.    As a direct result of the above-mentioned misrepresentations, Plaintiffs has been and

20  continues to be damaged in an amount to be proven at trial, but in no event less than the

21  jurisdictional amount.  Plaintiffs will seek leave of the Court to amend this Complaint once the

22  full amount of Plaintiffs' damages has been ascertained.

23  **SECOND CAUSE OF ACTION**

24  (California Bus. & Prof. Code Section 17200, et seq. Claims

25  Against All Defendants)

26  40.    Plaintiffs incorporate by reference, as though fully set forth, paragraphs 1 through 39 of

27  this Complaint.

28  41.    Plaintiffs brings this action as a private attorney general acting on their own behalf,

- 8 -

COMPLAINT

1  pursuant to California *Business and Professions Code* section 17200, *et seq.*, referred to as the

2  Unfair Competition Law (the "Unfair Competition Law" or "UCL").

3  42.    Plaintiffs are acting in this capacity to remedy the ongoing unlawful, unfair and fraudulent

4  business practices alleged herein, and to seek injunctive relief and restitution.

5  43.    The foregoing acts and omissions of Defendants affect trade and commerce as those terms

6  are defined under the UCL.

7  44.    Plaintiffs have standing to bring this suit under a UCL Claim because Defendants have

8  harmed Plaintiffs by wrongfully initiating and completing foreclosure proceedings against

9  Plaintiffs.

10  45.    The UCL defines unfair competition to include any unlawful, unfair, or fraudulent

11  business act or practice and provides that a court may order injunctive relief and restitution to

12  affected parties as a remedy for any violations of the UCL.

13  46.    Beginning on the dates indicated and at all times relevant herein, Defendants and the DOE

14  Defendants have committed acts of unfair competition proscribed by the UCL, including the

15  practices alleged herein against Plaintiffs.

16  47.    At all relevant times, Defendants have been systematically violating the provisions of the

17  Homeowner Bill of Rights, as it pertains to their obligations under the Deed of Trust and

18  proceeding with a non-judicial foreclosure.

19  48.    These violations are a matter of their standard corporate policy, and constitute a consistent

20  pattern and practice of unlawful corporate behavior.  Defendants' actions were against public

21  policy.

22  49.    The business acts and practices of these Defendants, as hereinabove alleged, constitute

23  "unlawful" business practices under UCL in that, for the reasons set forth above, said acts and

24  practices violate the provisions of the Homeowner Bill of Rights, the contract between the parties,

25  and Defendants' fiduciary duties.

26  50.    The business acts and practices of these Defendants, as hereinabove alleged, constitute

27  "unfair" business practices under UCL in that said acts and practices offend public policy and are

28  substantially injurious to Plaintiffs and all consumers.  Said acts and practices have no utility

- 9 -

1    whatsoever, much less sufficient utility to outweigh the substantial harm to Plaintiffs and other

2    consumers, and potential homeowners.

3    51.    Defendants made one or more misrepresentations and failed to make accurate

4    representations, and/or failed to provide material information about the transaction set forth

5    above.

6    52.    Specifically, Defendants processed and ratified the Loans, substantially amended and

7    failed to deliver material disclosures under the Homeowner Bill of Rights, failed to comply with

8    the contract between the parties, and failed to do so with statutory good faith and fair dealing.

9    53.    Defendants have failed to record any transfers of interest between the beneficiaries,

10   trustees before the non-judicial foreclosure process was initiated under California *Civil Code*

11   section 2932.5.

12   54.    Said misrepresentations and failure to make accurate representations were made

13   knowingly or with reason to know that Plaintiffs would rely thereon.

14   55.    Said misrepresentations and failure to make accurate representations were material to the

15   Loans from origination to present.

16   56.    Said misrepresentations and failure to make accurate representations were made with

17   intent and Plaintiffs relied thereon by seeking legal counsel and filing this suit against

18   Defendants.

19   57.    Plaintiffs reasonably relied, as specified, on these factual allegations.

20   58.    Plaintiffs were thereby damaged and have a substantial ascertainable loss.

21   59.    The business acts and practices of Defendants, as hereinabove alleged, constitute

22   "fraudulent" business practices under UCL in that said acts and practices are likely to deceive the

23   public and affected consumers' legal rights and obligations. Indeed, Defendants' acts, including

24   but not limited to active deception, falsifying documents, failing to deliver material documents,

25   and concealment, may preclude consumers from exercising legal rights to which they are entitled.

26   60.    The unlawful, unfair and fraudulent business acts and practices of Defendants described

27   herein present a continuing threat to members of the General Public and to Plaintiffs in that

28   Defendants and the DOE Defendants are currently engaging in such acts and practices, and will

- 10 -

COMPLAINT

1   persist and continue to do so unless and until an injunction is issued by this Court.

2   61.   Pursuant to California *Business and Professions Code* section 17203, Plaintiffs seeks an

3   order enjoining Defendants from engaging in the acts and practices as hereinabove alleged, and

4   an order that Defendants provide appropriate restitution to Plaintiffs.

5   <u>PRAYER</u>

6   WHEREFORE, Plaintiffs prays for relief as follows:

7      1.   General and consequential damages in an amount to be proven at trial;

8      2.   Special damages in an amount to be proven at trial;

9      3.   For disgorgement of profits;

10      4.   For an order enjoining defendants from taking any action to sell the Property;

11      5.   For pre and post judgment interest;

12      7.   For attorney's fees;

13      8.   For costs of suit; and,

14      9.   For such other and further relief as the Court may deem just and proper.

15

16   DATED:           MCFARLIN LLP

17

18            By: _____

19               Jarrod Y. Nakano
20               Attorneys for Plaintiffs
                 CARLOS VALDES and MINVERA VALDES

21

22

23

24

25

26

27

28

# Exhibit A

RECORDING REQUESTED BY
TICOR TITLE
TUSTIN-ORANGE CO. BRANCH

Recording Requested By:
See 'Return To:' name

Return To:
Document Management
Quicken Loans Inc.
1050 Woodward Ave
Detroit, MI 48226-1906

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

|||||||||||||||||||||||||||||||||||||||||   63.00

2011000475559 08:00am 09/27/11
93 401 D11 19
0.00 0.00 0.00 0.00 64.00 0.00 0.00 0.00

Prepared By:
Greg Smith

940708-12

—————— [Space Above This Line For Recording Data] ——————

## DEED OF TRUST

3302164582

MIN 100039033021645829

APN: 370-193-02

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated         September 23, 2011         ,
together with all Riders to this document.
(B) "Borrower" is Carlos Valdes, and Minerva Valdes, husband and wife, Joint
Tenants with Full Rights of Survivorship

Borrower's address is 1225 Goldenview Dr , Corona, CA  92882  .
. Borrower is the trustor under this Security Instrument.

(C) "Lender" is Quicken Loans Inc.

Lender is a
organized and existing under the laws of         Corporation
the State of Michigan

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01
2262910622
Wolters Kluwer Financial Services
VMP ®-6A(CA) (0711)
Page 1 of 16          Initials:

Lender's address is 1050 Woodward Ave, Detroit, MI  48226-1906

(D) "Trustee" is Hallmark Escrow

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated     September 23, 2011
The Note states that Borrower owes Lender Five Hundred Eighty Five Thousand and
00/100                                                                    Dollars
(U.S. $ 585,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than      October 1, 2041

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider            ☒ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider         ☒ Other(s) [specify]
                                                             Legal Attached

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County       of       Orange      :
[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]


SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.
SUBJECT TO COVENANTS OF RECORD.


Parcel ID Number:       37019302           which currently has the address of
1975 N Lassen Blvd                                             [Street]
              Orange           [City], California   92867-3339      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005   1/01
VMP ®-6A(CA) (0711)            Page 3 of 16       Initials:

q03302164592 0233 478 0315

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

q03302364582 0233 476 0415

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS                    Form 3005   1/01
VMP ®-6A(CA) (0711)                                      Page 4 of 15                      Initials: ___

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

q03502164582 0233 478 0815

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005 1/01
VMP ®-6A(CA) (0711)                                    Page 9 of 16          Initials:

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender



q03302164382 0233 478 0915

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

q03302164582 0233 478 1215

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
VMP ®-6A(CA) (0711)                      Page 12 of 16          Initials:           Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS      Form 3005  1/01
VMP ®-6A(CA) (0711)                        Page 13 of 15        Initials:

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ 09/23/2011 ___ (Seal)
                                       Carlos Valdes                        -Borrower

_____        _____ 09/23/2011 ___ (Seal)
                                       Minerva Valdes                        -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                   -Borrower

_____ (Seal)        _____ (Seal)
                              -Borrower                                   -Borrower

q03302164582 0253 476 1415
CALIFORNIA Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS        Form 3005  1/01
VMP®-6A(CA) (0711)                              Page 14 of 15

State of California
County of ~~Orange~~ *Riverside*                                    } ss.

On    September 23, 2011    before me, *Bryan Vargas, Notary Public*
personally appeared
Carlos Valdes, and Minerva Valdes, husband and wife. Joint Tenants
with Full Rights of Survivorship

, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF
PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.



BRYAN VARGAS
Commission # 1843725
Notary Public - California
Orange County
My Comm. Expires May 5, 2013

_____ (Seal)

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
q03302164582 0233 478 1515

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
VMP ®-6A(CA) (0711)                                    Page 15 of 15        Initials: _____

MERS MIN: 100039033021645829                                    3302164582

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this             23rd          day of
September, 2011            , and is incorporated into and shall be
deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the
"Security Instrument") of the same date, given by the undersigned (the "Borrower") to
secure Borrower's Note to
Quicken Loans Inc.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at:

1975 N Lassen Blvd
Orange, CA 92867-3339
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling,
together with other such parcels and certain common areas and facilities, as described in
CC & R's as amended from time to time

(the "Declaration"). The Property is a part of a planned unit development known as
Mabury Ranch

[Name of Planned Unit Development]
(the "PUD"). The Property also includes Borrower's interest in the homeowners association or
equivalent entity owning or managing the common areas and facilities of the PUD (the
"Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. PUD Obligations. Borrower shall perform all of Borrower's obligations under the PUD's
Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of
incorporation, trust instrument or any equivalent document which creates the Owners
Association; and (iii) any by-laws or other rules or regulations of the Owners Association.
Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the
Constituent Documents.

MULTISTATE PUD RIDER- Single Family - FannieMae/FreddieMac UNIFORM INSTRUMENT
Form 3150 1/01   2262910628
Wolters Kluwer Financial Services              Page 1 of 3              Initials:
VMP®-7R (0811)

q03307264582 0265 483 0203

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

MULTISTATE PUD RIDER- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-7R (0811)                     Page 2 of 3          Initials: _____      Form 3150 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ 09/23/2011 (Seal)
Carlos Valdes                    -Borrower

_____ 09/23/2011 (Seal)
Minerva Valdes                    -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

q03302104582 0265 483 0203

MULTISTATE PUD RIDER- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
VMP®-7R (0811)                    Page 3 of 3                    Form 3150 1/01

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF ORANGE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 38 OF TRACT NO. 9708, IN THE CITY OF ORANGE, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 401, PAGE(S) 10 TO 16, INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Assessor's Parcel Number: **370-193-02**